# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 26, 2011

## STATE OF TENNESSEE v. TERRY GUNTER

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S56,513      R. Jerry Beck, Judge**

---

**No. E2010-02140-CCA-R3-CD - Filed July 1, 2011**

---

The defendant, Terry Wayne Gunter, appeals the sentencing decision of the Sullivan County Criminal Court. The defendant pled guilty to Class E felony forgery and Class D felony identity theft. Pursuant to the agreement, he was to be sentenced to concurrent terms of one year and two years, respectively, with the manner of service to be determined by the trial court. Following a hearing, the court ordered that the sentences be served in confinement. On appeal, the defendant contends that the trial court erred in denying him an alternative sentence, specifically probation. Following review of the record, we find no error and affirm the sentences as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

James O. Martin, III, Nashville, Tennessee; Stephen M. Wallace, District Public Defender; and Joseph F. Harrison, Assistant Public Defender, for the appellant, Terry Gunter.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Julie Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The relevant facts underlying the defendant's convictions, as recited by the State at the guilty plea hearing, are as follows:

Had Case S56513 proceeded to trial the State would have offered evidence that on November 14th, 2007, Mary Hamilton, with Taylor-Hamilton Insurance, called and reported that Check #2966 was passed at 105 West Stone Drive at Regions Bank.

Detective Todd Ide responded to Regions Bank and spoke with employee Brittany Pennington, who advised that a male and female came into the bank and attempted to cash a Taylor-Hamilton Insurance check that was made out to Terry Gunter, and the amount of the check was actually made for $623.41. Brittany advised the male gave her his driver's license and the check. She advised he signed the check, and she attempted to verify payment and was advised to call the business.

When calling the business, it was determined that the check could not be cashed. When Sharon Gragg gave the driver's license back to the male, he and the female left the bank.

Detective Todd Ide obtained a copy of Check 2966 that was signed by Terry Gunter. Detective Ide showed bank employees a photo lineup of Brandy Roberts and Terry Gunter, and the bank employees identified Roberts and the Defendant, Terry Gunter, as the two subjects who attempted to cash the check that had been reported stolen by Mary Hamilton of Taylor-Hamilton Insurance. Ms. Hamilton did not give either Terry Gunter or Brandy Roberts permission to pass this check.

Based upon these actions, the defendant pled guilty to forgery and identity theft. As part of the plea agreement, the parties agreed to a one-year sentence for forgery and to a two-year sentence for identity theft, with both sentences to be served concurrently as a Range I offender. The agreement provided that the trial court was to determine the manner of service of the sentences following a sentencing hearing.

At the hearing to determine the manner of service of the sentences, the State introduced the presentence report, which the trial court reviewed extensively on the record. The court noted the defendant's long prior history of criminal convictions, including four theft convictions, drug possession and drug paraphernalia convictions, and two driving under the influence convictions. The court also noted that the defendant had been arrested twice while on bond awaiting disposition in the instant case and that he had been convicted of criminal trespass and reckless endangerment in the interim. The court also took note of the fact that the defendant had been found guilty of probation violations on two previous occasions. From the report, the court also took notice of and commented on the defendant's

mental health, alcohol usage, and his employment and educational history. The State presented no additional proof.

The main focus of the proof presented by the defendant at the hearing centered around the injuries he had suffered in a car accident in 2008. It was established that the defendant was a passenger in a car which was wrecked and that he suffered a severe closed-head injury as a result of the accident. The defendant presented three letters from doctors in reference to his injury. One letter indicated that, in the doctor's opinion, the defendant would not be able to return to work and, further, that he believed the defendant was not competent to stand trial or to be safely incarcerated. A second doctor's letters indicated that the defendant had a steel plate surgically implanted in his skull and that further head trauma could cause worsening of his brain damage. The third letter, from the defendant's treating physician, noted that the defendant suffered severe pain and anxiety, was on medication for life-threatening seizures, and that it was inadvisable for him to be deprived of his medications.

The defendant also testified at the hearing, indicating that he was a divorced father of six children. He noted that his two youngest children, ages three and eighteen months, were also the children of his current girlfriend, who was the co-defendant in this case. The defendant discussed his head injury and testified that he understood that another blow to the head, such as if he were attacked in prison, could cause him serious damage or death. The defendant went on to acknowledge his "troublesome" prior criminal record, as well as the convictions he had acquired while on bond for the instant convictions. He also acknowledged two previous probation violations. Finally, the defendant testified that he no longer drank to excess and did not use illegal drugs.

After hearing the evidence presented, the trial court concluded that the sentences should be served in incarceration. The defendant has timely appealed that decision.

**Analysis**

On appeal, the defendant challenges the trial court's decision ordering that the sentences in this case be served in confinement. The defendant argues that he "was a favorable candidate for probation in this case and the record does not demonstrate the trial court made the required sentencing considerations prior to denying an alternative sentence." He specifically contends that it was a violation of his Due Process rights for him to be sentenced to incarceration because the trial court, on the record, failed to acknowledge his status as a favorable candidate for probation. Finally, he argues that he established a great potential for rehabilitation and that the severity of his injuries should be given weight in reaching the appropriate sentence.

When reviewing sentencing issues, the appellate court shall conduct a *de novo* review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (2010). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id*. at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). The defendant bears "the burden of showing that the sentence is improper." *Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2010) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . .

Under the revised Tennessee sentencing scheme, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-102(6)). Instead, a defendant not within "the parameters of subdivision (5) [of Tennessee Code Annotated section 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2010). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. *Id*. at 303(b); *see also State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. *Id*. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *Goode*, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997); *Bingham*, 910 S.W.2d at 456.

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations which establish "evidence to the contrary" to rebut a defendant's status as a "favorable candidate" for alternative sentencing :

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also Dowdy*, 894 S.W.2d at 305-06.

In imposing a sentence of confinement, the trial court made the following remarks on the record:

> This - - first addressing his medical problems, he does have very serious medical problems. It's not unusual for people to be in jail that do have various plates in their head. We've done it on prior occasions. I don't know if he's any different from others.
>
> The Defendant's prior record is awful. This crime did not cause any threatening behavior or public - - or injury to other persons. It's a property - -

a paper type crime, identity theft and forgery. We do have prison overcrowding.

But, nonetheless, the Defendant was put on probation numerous times before; has violated before. He's been in constant trouble since he was a fairly young man, going back to age 24. No really mitigating factors that the Court can find except that he . . . has obtained a GED.

He'll be required to serve his sentence. . . .

The defendant contends that the trial court's ruling is not entitled to the presumption of correctness because the record fails to show that the trial court considered all the required principles of sentencing. We cannot agree and conclude that the trial court properly considered the statutory sentence principles and all relevant factors. The court, albeit in an abbreviated fashion, did make findings on the record which indicate that the sentencing principles were complied with in this case. Accordingly, the trial court's decision is entitled to a presumption of correctness on appeal. As an aside, we note that, had this court conducted a *de novo* review, the result of the proceeding would not have been altered.

The record amply supports the trial court's finding that alternative sentencing was not appropriate based both upon the defendant's prior criminal history and his prior failures to comply with probationary releases. These facts are not contested, as the defendant acknowledged his "troublesome" record as well as his prior probationary violations, and evidence of both was put forth in the presentence report which was admitted without objection. This, in and of itself, is ample evidence to impose a sentence of confinement. In fact, the defendant's argument does not seem to focus on these required findings of evidence to the contrary. Indeed, a reading of the sentencing hearing transcript illustrates that point clearly based upon the following comment made by trial counsel: "[A]s Your Honor reviewed his prior record, he has a substantial prior record, and one that would probably mean the Court would not consider him certainly for probation; maybe not for alternative sentencing at all. And we recognize that."

Rather, the defendant's argument that he is entitled to alternative sentencing appears to be based upon his medical condition. He seems to indicate that, although grounds to impose a sentence of confinement exist, he should not be confined due to the serious nature of his head injury and the possibility that he could be injured further in prison because of it. We find this argument to be misplaced and refuse to carve out an exception to the applicable law based upon this argument. Following review, we conclude that the trial court properly denied the defendant's request for alternative sentencing based upon the defendant's lengthy criminal history and repeated failures to comply with sentences involving release into the

-6-

community.  The defendant has failed to carry his burden of establishing his entitlement to relief.

## CONCLUSION

Based upon the foregoing, the sentencing decision of the Sullivan County Criminal Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE